**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

JEFFREY ARTHUR,

        Plaintiff,

v.                                      Civil Action No. 2:11cv80
                                         (Judge Bailey)

WILLIAM FOX, Warden,
VICKIE GHEEN, Medical Administrator,
PAUL MODIE, Medical Director,
WEXFORD MEDICAL SOURCES, Inc.,

        Defendants.

## REPORT AND RECOMMENDATION

### I.  Procedural History

The *pro se* plaintiff initiated this case on October 18, 2011, by filing a complaint pursuant to 42 U.S.C. § 1983, together with a Motion to Proceed Without Prepayment of Fees, a Prisoner Trust Account Report, and a Consent to Collection. On October 19, 2011, the plaintiff's Motion to Proceed *in forma pauperis* was granted, and he was directed to pay an initial partial filing fee. The plaintiff paid the required fee on November 10, 2011. On April 16, 2012, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was issued and summonses were sent to the United States Marshal Service for delivery to the defendants. Defendants Fox, Gheen, and Wexford Health Sources ["Wexford"] were served on April 19, 2012. However, the summons for defendant Modie was returned unexecuted.[1] On May 10, 2012, defendant Fox filed a Motion to Dismiss and a <u>Roseboro</u>

---

[1]The summons for Dr. Modie was sent to St. Marys Correction Center, the address provided by the plaintiff. According to the return, Dr. Modie retired from Wexford Health Sources in October of 2011. (Doc. 36).

Notice was issued the following day. On June 18, 2012, the plaintiff filed a "Response" to the Motion to Dismiss. On July 12, 2012, defendants Gheen and Wexford filed a Motion for Extension of Time to File Answer. On August 28, 2012, the Motion was granted, and defendants Gheen and Wexford subsequently filed a Motion to Dismiss on September 17, 2012. A <u>Roseboro</u> Notice was issued the next day, but to date, no response has been filed. On October 22, 2012, the plaintiff was directed to provide an updated address for defendant Modie. On November 9, 2012, the plaintiff provided the Court with the address of Wexford in Pittsburgh, Pennsylvania as the service address. A new summons and Order to Answer were issued to the US Marshal Service on November 13, 2012. On January 31, 2013, the summons was returned unexecuted with a notation that Dr. Modie was last employed by Wexford Health on October 29, 2011.

## II. Contentions of the Parties

### A. The Complaint

The plaintiff maintains that in June of 2010, while housed at the Denmar Correctional Center ["DCC"] he was diagnosed with Human Papillomavirus ["HPV"]. He alleges that he began a treatment regime which consisted of two week cycles of a caustic material which slowly burns of the herpes bumps in affected areas. The plaintiff maintains that this treatment was effective for the outbreaks, as was the hydrocortisone cream which was prescribed for the lesions/rashes that developed after the herpes bumps. The plaintiff continues his complaint by noting that he was transferred to St. Marys Correctional Center ["SMCC"] on September 1, 2010. The substance of the plaintiff's complaint deals with his medical treatment at SMCC.

More specifically, the plaintiff alleges that upon arrival at SMCC, he informed the nurse and doctor of his previous diagnosis and treatment plan at DCC. The plaintiff indicates that he explained

that treatment was vital and essential to prevent the herpes outbreaks which are painful, and which he maintains can lead to further complications requiring more severe and extensive treatment. He also indicates that he requested that he be seen by an Infectious Disease Specialist for a review of his medical diagnosis and formulation of an effective treatment plan. The plaintiff maintains that his request for a referral was refused and two tubes of hydrocortisone cream sent with him from DCC were confiscated because the doctor claimed he saw no visual signs of an outbreak.

According to the complaint, the plaintiff suffered a severe herpes outbreak three weeks later which resulted in lesions, rashes, bumps and excruciating pain. The plaintiff maintains that Dr. Modie dismissed the bumps as nothing. Accordingly to the plaintiff, after multiple Health Service Requests ["HSR"], Dr. Modie ordered lab work. In November of 2010, the plaintiff was informed that the test results indicated that he was positive for Herpes Simplex Virus ["HSV"}. The plaintiff maintains that he suffers from HSV-2 because his infection is in the genital area.

According to the complaint, Dr. Modie subsequently explained that his policy does not allow him to give treatment for HSV. However, he did provide the plaintiff with hydrocortisone cream for the rash and told him not to worry about the bumps. In addition, Dr. Modie mentioned that he could administer a long outdated treatment procedure[2] which could help. Said treatment consisted of using a needle to inject novocaine and then using an electric needle which looked like a hot glue gun to burn off the bumps. The plaintiff maintains that in administering this treatment, Dr. Modie's did not fully or properly numb the area, and therefore the pain was unbearable. In addition, the plaintiff maintains that Dr. Modie's hands shook uncontrollable throughout the procedure, and he appeared

---

[2]It is unclear whether Dr. Modie described it as long outdated, or whether plaintiff is personally asserting that it is long outdated.

to have no idea what he was doing. Consequently, the plaintiff maintains that Dr. Modie did not completely burn off the bumps, negligently burned areas of his penis and caused scarring and burns which still exist. The plaintiff further alleges that he submitted another HSR request, and Dr. Modie informed him he could repeat the procedure. The plaintiff indicates that when he asked if there was a safer, less painful treatment, Dr. Modie stated that his policy did not allow him to treat the condition that he has. However, Dr. Modie would not show him this policy that refuses proper treatment for his infectious disease. Finally, the plaintiff notes that he had no further treatment for the bumps, and only has been issued hydrocortisone cream for the rashes. Despite this allegation, the plaintiff notes that on June 13, 2011, Dr. Modie ordered Doxicyclene which was later determined not to be an effective treatment for HSV. In addition, the plaintiff notes that he got a rash in his pubic and genital area and, Dr. Modie ordered Tolnafaftate cream, but it was not available until June 24, 2011.

In summary, the plaintiff alleges that from September 1, 2010 until January 1, 2011, he was refused treatment of any kind for his known serious medical needs. Thereafter, the treatment was not effective, was neglectful, and was continually delayed by Wexford Medical Services. Moreover, despite his multiple requests for referral to an infectious disease specialist for review and treatment, he has been refused. The plaintiff believes that the treatment and the lack of the same provided by Wexford Medical staff and Dr. Paul Modie is a violation of his Eighth Amendment rights and constitutes cruel and unusual punishment. Moreover, the plaintiff alleges that Dr. Modie and the Wexford Medical staff have been deliberately indifferent to his serious medical needs. For relief, the plaintiff seeks damages in the amount of $500,000 together with injunctive and declaratory relief.

**B.** **Motion to Dismiss by Defendant Fox**

In support of his Motion to Dismiss, defendant Fox asserts that no where in the plaintiff's complaint does he describe any action and/or inaction which was personally taken by him. Moreover, defendant Fox notes that he is not responsible for making medical decisions in regard to the plaintiff or any other inmate. Accordingly, defendant Fox argues that it is assumed that all claims which have been asserted against him are based on supervisory liability. However, defendant Fox contends that any claims based on supervisory liability must fail.

### C. Motion to Dismiss by Defendants Gheen and Wexford Health Sources

In support of their Motion to Dismiss, these defendants assert that it is apparent from a reading of the complaint and attachments, that the plaintiff's dissatisfaction is with Dr. Modie and the various treatments and procedures ordered by Dr. Modie. In addition, they note that neither Vickie Gheen, nor any other nurse, has the authority to proscribe medications and administer the treatments which were administered by Dr. Modie. Accordingly, they argue that Vickie Gheen must be dismissed as a defendant. Additionally, these defendants argue that Wexford is not a person for purposes of 42 U.S.C. § 1983. They also allege that there is no allegation of a policy or custom on the part of Wexford to treat the alleged serious medical need of the plaintiff with deliberate indifference. Because there are no allegations against Wexford involving alleged policies or customs of deliberate indifference, respondeat superior does not apply to Wexford, a private corporation, and the action should be dismissed against it.

### D. Plaintiff's Response to Defendant Fox's Motion to Dismiss

On June 1, 2012, the plaintiff filed a Motion to Extend Time for Filing Briefs. In addition, in that same document, the petitioner "responds" to defendant's Motion to Dismiss. More specifically, he notes that if he been on a proper treatment program at SMCC, he would not have

experienced severe outbreaks, rashes, bumps and open sores. The plaintiff further notes that he had

a treatment plan at DCC, and the medical care at that facility is also provided by Wexford. The

plaintiff contends that the treatment plan at DCC did not consist of anything painful, nor did the

treatment leave scars. The plaintiff also alleges that defendant Fox cited a case which is not relevant

to the instant case. Finally, the plaintiff argues that as Warden, defendant Fox is indeed responsible

for every individual on SMCC property.

The plaintiff's Motion for an Extension of Time was granted on June 4, 2012, and he was

afforded until July 27, 2012, to file a response to the Motion to Dismiss by defendant Fox. Despite

this extension of time, the plaintiff did not file a "response." Instead, on June 18, 2012, he filed 99

pages of administrative grievances, many of which post-date the complaint, copies of documents

already in the court file, and copies of letters to and responses from various groups from whom the

plaintiff sought legal assistance. [Doc. 42]

### III.   Standard of Review

**A.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,

it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."

Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion

to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the

complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d

1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Conley</u>, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>id</u>. (citations omitted), to one that is "plausible on its face," <u>id</u>. at 570, rather than merely "conceivable." <u>Id</u>. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." <u>Bass v. E.I.DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir.2003) (citing <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir.2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id</u>.

## IV. <u>Analysis</u>

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff

must show that the defendant acted with deliberate indifference to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. <u>Gaudreault v. Municipality of Salem, Mass.</u>, 923 F.2d 203, 208 (1st Cir. 1990), <u>cert. denied</u>, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. <u>Monmouth County Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3rd Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).[3]

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. <u>Wilson</u>, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that

---

[3] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. <u>Webb v. Prison Health Services,</u> 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. <u>Veloz v. New York</u>, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. <u>Brice v. Virginia Beach Correctional Center</u>, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. <u>Browning v. Snead</u>, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. <u>Finley v. Trent</u>, 955 F. Supp. 642 (N.D. W.Va. 1997)

the risk to which the fact gave rise was insubstantial of nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).Here, even assuming that the plaintiff has a serious medical condition, the defendants who have been served, are due to be dismissed for the reasons more fully discussed below.

**A. Warden Fox**

In order to establish personal liability against a defendant in a § 1983 action, the defendant must be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). The plaintiff does not allege any personal involvement with his medical care by Warden Fox. Instead, he appears to allege that he is responsible for his staff and their  actions.[4]

_____

[4]In truth, the complaint contains no specific allegation against Warden Fox, but instead, simply names him as a defendant. However, in the only "response" he filedto Warden Fox's Motion

When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom for which he is responsible, see Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982); Orum v. Haines, 68 F. Supp.2d 726 (D.D. W.Va. 1999), or the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Id. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

The plaintiff makes no allegations in his complaint which reveals the presence of the required elements for supervisory liability against Warden Fox. Furthermore, the undersigned notes that the Fourth Circuit has held that non-medical personal may rely on the opinion of medical staff regarding the proper treatment of inmates. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Thus, Warden Fox could rely on the decision by Dr. Modie with respect to the plaintiff's care. Consequently, the

---

to Dismiss, the plaintiff, as previously noted, alleges that as the Warden of SMCC, defendant Fox is legally responsible for every individual on the property.(Doc. 40, p. 4).

undersigned finds that the plaintiff has failed to state a claim against Warden Fox,[5] and he should be dismissed as a defendant in this action.

## B. <u>Wexford Medical Sources, Inc.</u>

The plaintiff alleges that the defendant(s) have deprived him of his rights and raises a claim under 42 U.S.C. § 1983 which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. <u>Rendall-Baker v. Kohn</u>, 547 U.S. 830, 838 (1982). However, it is clear that Wexford is not a "person" for purposes of 42 U.S.C. § 1983, and there are no allegations against Wexford involving policies or customs of deliberate indifference. In fact, the plaintiff acknowledges that Wexford provided his care at DCC, and it appears that he was more than satisfied by that treatment and wanted the same continued at SMCC. To the extent, therefore, that the plaintiff alleges that there was a policy not to treat HSV at SMCC, the undersigned can only conclude that the plaintiff is alleging a personal policy on the part of Dr. Modie. Accordingly respondent superior does apply, and Wexford is due to be dismissed as a defendant.

---

[5]To the extent that the plaintiff may be asserting that Warden Fox was deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a claim. <u>See</u> <u>Paige v. Kuprec</u>, 2003 W.L. 23274357 *1 (D.Md. March 31, 2003).

**C. Vicki Gheen**

As correctly noted by the Memorandum of Law filed by defendants Gheen and Wexford, the only mention of Vicki Gheen, by name, is in the style of the complaint and in the designation of parties in Section 1 of the Complaint, wherein she is described as "Vickie Gheen MED. ADM. St. Mary's (sic) Correctional Center." The only other place where Ms. Gheen's name appears are in two exhibits attached to the complaint which are statements from Ms. Gheen filed in response to administrative grievances. Accordingly, the plaintiff has made no allegation, either implied or expressed, that Ms. Gheen denied him medical care or somehow prevented him from receiving medical care. In short, there is no allegation that Ms. Gheen was in any way deliberately indifferent to his medical needs. Therefore, she too, must be dismissed as a defendant.

**D. Dr. Modie**

To date, despite two separate attempts, the U.S. Marshal Service has been unable to serve Dr. Modie. Rule 4m of the Federal Rules of Civil Procedure provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against the defendant or order that service be made within a specified period of time." It has now been more than fifteen months since this complaint was filed. The plaintiff was given a second opportunity to provide a service address for Dr. Modie. The address he provided did not lead to service. The undersigned has no reasonable expectation that the plaintiff will be able to provide an address at which Dr. Modie can be served. Therefore, this Report and Recommendation should serve as notice to the plaintiff that Dr. Modie will be dismissed as a defendant.

## V. Recommendation

For the reasons stated, the undersigned recommends that the Motions to Dismiss [Docs. 21 and 50] **be GRANTED**, and the plaintiff's complaint, as it relates to William Fox, Vickie Gheen

and Wexford Health Sources, be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. It is further recommended that the plaintiff complaint, as it relates to Paul Modie, be **DISMISSED WITHOUT PREJUDICE** for lack of service.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: 1-31-2013

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE